UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

March 26, 2010

Lawrence P. Demuth, Esquire
Mignini & Raab, LLP
2015 Emmorton Road, Ste. 202
Bel Air, MD 21015

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD 21201

**Re: Debra Wells v. Michael J. Astrue, Commissioner of Social Security, PWG-08-2239**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Debra Wells' claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits("SSI"). (Paper Nos. 8,17,20). The Plaintiff also filed a Response to Defendant's Motion. (Paper No. 25). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

Debra Jean Wells ("Claimant"), applied for DIB and SSI on February 7, 2005 and January 30, 2005, respectively, alleging that she was disabled since January 15, 2002, due to edema in her legs from injuries sustained in a remote motorcycle accident, degenerative disc disease/degenerative arthritis of the cervical and lumbar spine, osteoarthritis in her knees, shoulder pain, obesity, and depression. (Tr. 15, 56, 70, 120, 147,266). Her claims were denied initially and upon reconsideration.(Tr. 32-36). A hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Karl Alexander on September 19, 2007, where Ms. Wells appeared and testified. (Tr. 246-283). The ALJ subsequently denied her claims in a decision dated October 18, 2007. (Tr. 13-23). The ALJ found that Claimant's degenerative disc disease/degenerative

arthritis of the cervical and lumbar spine; mild to moderate degenerative osteoarthritis of the knees; bilateral sacroiliitis; history of leg surgery and obesity were "severe" impairments, as defined in the Regulations. However the ALJ also determined they did not meet or medically equal any of the listed impairments ("the Listings"). The ALJ also determined that Claimant retained the residual functional capacity ("RFC") to perform a range of light work[1]. (Tr. 15-20). The ALJ then found that Claimant was not able to perform any of her past relevant work ("PRW"), but that considering her age, education, work experience, and RFC and after receiving testimony from a vocational expert, (" VE"), found there were jobs that existed in the national economy that she could perform. Accordingly, the ALJ found that she was not disabled. (Tr. 23). On August 15, 2008, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 5-8).

Ms. Wells presents several arguments in support of her contention that the Commissioner's final decision is not supported by substantial evidence.

Claimant's primary argument is that the ALJ improperly rejected the opinions of her treating physicians, Drs. Snow and Mullings in determining her RFC for less than a full range of light work. On November 3, 2005, Dr. Paul Snow completed a Medical Report Form in which he stated, among other things, that due to "leg back knee pain " Claimant did not have the capacity necessary to:
  (1) lift more than 10 pounds;
  (2) sit or stand for more than 1 hour out of an 8 hour period; and that her condition
  (3) prevent her from working.
(Tr. 104-105).

In a report dated April 25, 2006, Dr. Rohan Mullings stated that Claimant has: bilateral sacroiliitis, hip enthesitis, she walks with a limp, uses a cane, and has an obvious deformity of the right leg with large ,well healed surgical scars. (Tr. 201). Dr. Mullings also stated she has possible degenerative joint disease

---

[1] The ALJ found that Claimant's ability to perform a full range of light work was diminished by the following: her need for a sit/stand option; she could only occasionally perform postural movements; she could not kneel, crawl, or climb ladders, ropes, or scaffolds; she should not be exposed to temperature extremes and should work in a low stress environment with no production line type of pace or independent decision making responsibilities. (Tr. 17).

of both knees, possible right S1 radiculopathy. (Id.)

The ALJ considered Dr. Snow's opinions but rejected them, and found they were not supported by the objective medical evidence. (Tr. 21). The ALJ also discussed Dr. Mullings' report but found that many of his diagnoses were less than definitive.(Tr. 20). Claimant argues that the ALJ erred by accepting the opinions of the state agency physicians since they never examined Claimant, whereas Dr. Snow examined her one time. However, a treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig* v. *Chater,* 76 F.3d 585 (4th Cir. 1996); *see also* 20 CFR §404.1527(d)(2). While treating source opinions on issues reserved to the Commissioner--such as determining a claimant's RFC--are not entitled to controlling weight, the ALJ still must evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record.  In this case, I find that the ALJ fulfilled this duty.  Contrary to Claimant's argument, I find that the ALJ adequately discussed Drs. Snow and Mullings opinions in his decision.  The ALJ specifically addressed Dr. Snow's opinions and in rejecting them, noted the evidence that the Claimant's diagnostic studies revealed only mild to moderate degenerative changes,  a bone density scan was normal, x-rays of her shoulder showed no abnormality and a CT scan of her shoulder was unremarkable. (Tr. 20, 219, 232,233).  The ALJ also found that two of the examining consultative state agency physicians, rendered consistent opinions regarding Claimant's physical limitations, and that these evaluations supported some of the ALJ's findings.  For example, regarding Claimant's abilities the ALJ found that she also required a sit/stand option. (Tr. 163, 204).

Furthermore SSR 96-6p provides that an ALJ may afford great weight to non-examining state agency physicians' opinions.[2] The ALJ adequately discussed the reasons for affording the State Agency physicians' opinions significant weight. (Tr. 20-21). In sum, this evidence was properly considered by the ALJ and I find the ALJ's RFC findings are explained adequately and are

---

[2] SSR 96-6p, in relevant part, states:*3 In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists **may be entitled to greater weight than the opinions of treating or** examining sources. SSR 96-6P, 1996 WL 374180 at *2*3(S.S.A.)(emphasis added).

supported by substantial evidence[3].

The Claimant also argues that the ALJ failed to properly analyze her complaints of pain and the effects it had on her ability to perform work thereby rendering his hypothetical to the VE inadequate. I disagree.  Because pain itself can be disabling, "it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980).  In this Circuit, it is well-established that an ALJ must follow the two-step process for assessing complaints of pain as set forth in *Craig v. Chater*, 76 F.3d 585,594-596 (4th Cir. 1996). *See, e.g., Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652-653 (D. Md. 1999); *Hill v. Comm'r.*, 49 F. Supp. 2d 865, 868 (S.D.W.Va. 1999).  First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the pain the claimant alleges he or she suffers. *Craig*, 76 F.3d at 594, *citing* 20 C.F.R. §404.1529(b). This first prong, however, does not require a determination regarding the intensity, persistence, or functionally limiting effects of the pain asserted. *Id.*  This is reserved for the second inquiry, which is an evaluation of the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Craig,* 76 F.3d at 595. Importantly in assessing the intensity and persistence of claimant's pain, claims of disabling pain may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.  20 C.F.R. §404.1529(c)(2).

Here, it is not the first prong of the *Craig* test that is challenged: clearly, the ALJ found that Ms. Wells suffers from medical impairments reasonably expected to cause pain, namely her osteoarthritis, degenerative disc disease, obesity and bilateral sacroiliitis. It is the intensity of her pain, its duration and limiting effects that the ALJ questioned. (Tr. 18). In the ALJ's opinion, the claimant clearly suffered from various back, neck, and leg pains from time to time, but not to the severity and frequency which she alleged. (Tr. 18).  The ALJ discussed her statements regarding her use of a cane, her use of over the counter medications, and the fact that at her doctors'

---

[3] This renders Claimant's final argument that the ALJ erred by utilizing Grid Rule 201.18 (light work) moot.  Grid Rule 201.10 would have only applied if Ms. Wells had been limited to the sedentary level.

office, she reported her pain at a level four. (Tr. 17-21,200). After review of the ALJ's decision, I find the ALJ recognized his duty and evaluated properly Ms. Wells's knee, neck, leg, and back pain.  The ALJ did not rely solely on the existence or nonexistence of objective medical records in judging the intensity and persistence of Claimant's pain. Rather, the ALJ also evaluated the evidence submitted by Ms. Wells regarding her activities, the treatments she follows--including medications[4], and her testimony at the hearing. (Tr. 200,207, 263-264). These factors, coupled with Ms. Wells' testimony regarding her activities, were appropriately considered,[5] and they provide substantial support for the ALJ's conclusion and the hypothetical presented to the VE was adequate.  Accordingly, there is substantial evidence to support the ALJ's analysis of Ms. Wells's allegations of pain.

Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Claimant's Motion.  A separate Order shall issue.

Sincerely,

/s/
Paul W. Grimm
United States Magistrate Judge

---

[4] The ALJ noted Claimant's medical records stated that she takes over-the-counter medication(ibuprofen, adult aspirin) for pain.  (Tr. 18, 160, 167).

[5] SSR 96-7p provides: the adjudicator must consider certain factors "in addition to the objective medical evidence when assessing the credibility of an individuals statements": Those factors include 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms ; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board ); and  7. Any other factors concerning the individuals functional limitations and restrictions due to pain or other symptoms. SSR 96-7p (1996 WL 374186, *2 (S.S.A.))